### THE GEORGE H. INGALLS.

### EASTERN S. S. CORPORATION v. CITY OF CHICAGO.

#### No. 4382.

Circuit Court of Appeals, Seventh Circuit.

Feb. 16, 1931.

Rehearing Denied April 10, 1931.

Lawrence E. Coffey, of Buffalo, N. Y., and Robert Branand, Jr., of Chicago, Ill., for appellant.

Lewis F. Mason, of Chicago, Ill., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Appellant argued that the damage occurred in this manner: On the afternoon of August 10, 1927, the steamer was slowly proceeding, stern first, about 2 to 3 miles per hour, down the Chicago river under charge of two steam tugs, one attached to the stern and the other to the bow of the steamer, when it came to the city's Harrison street bridge. Upon signal, the bridge opened, and the front tug passed through, pulling the stern of the steamer behind it. When the latter was about half through, the operator of the east leaf lowered it and caught and damaged the steamer's mast, its texas, etc.

Appellee denied that the bridge was lowered while the steamer was passing through, and accounted for the accident in this way: The steamer, 430 feet long and 50 feet wide, under charge of the two tugs, was being pulled down the river when it came to the bridge, which upon signal opened to its full height. At or near the bridge the river bends, and the front tug, in order to direct the steamer along or near the center of the river, pulled its stern to the west, which resulted in the bow's swinging to the east over and against the east base of the bridge. The rear tug endeavored to prevent this eastern swing of the bow by pulling against it. The result was that the mast and the texas struck the upstanding east leaf of the bridge and were damaged.

To disprove this explanation of appellee, appellant asserts that it was physically impossible for the steamer's mast or its texas to crash the bridge if the east leaf of the bridge were not partially lowered.

While the issue is simple, only a single question being presented, Was the east leaf of the bridge lowered when the steamer passed through? the oral testimony bearing thereon is hopelessly in conflict. Appellant's employees were its witnesses, and they "stood by their ship" to the last man. The city's

employees with equal unanimity supported the cause of their employer. There is no possible reconciliation of this contradictory testimony. A half dozen witnesses, all observers of the accident and well positioned to see what took place, said the east leaf of the bridge was lowered, and, on the other hand, appellee's witnesses, equally well stationed to observe it all, said their eyes were glued on the steamer and the bridge at the time and the leaf of the bridge remained unchanged while the steamer passed through.

Were the oral testimony decisive of the question, our decision would be readily reached. The finding of the District Judge, who saw and heard these witnesses, would at once be adopted.

But appellant's argument is built on the so-called physical facts, deductions from which are not capable of refutation, so it says.

In the last analysis its position is reduced to this single proposition: The damage could not have occurred had the bridge not been lowered. If this fact is established, the decree must be reversed.

We have availed ourselves of the practice, permissible in admiralty appeals, of receiving additional evidence in this court. Respecting the facts brought out by this new evidence, the proctors are in complete accord. In fact, it might be said that proctors have supplemented the record which was before us by an agreed statement of specific facts.

This additional evidence, while favorable to the appellee, still fails to explain the accident save on the theory that the bridge tender on the east side lowered his leaf of the bridge while the steamer was passing through.

The physical facts, the uncontrovertible facts, furnish a mathematical demonstration of the correctness of this conclusion.

The peak of the mast was about 80 feet above the water level. The bridge extended up about an equal height. The angle of the leaf of the bridge was 71° when wide open; in other words, it was only 19° from being vertical. It was agreed that the bridge was in the first instance open to its greatest height.

It was further agreed that the steamer was on even keel as it passed through the bridge and that there was no listing toward the bridge. There was a dispute in the testimony as to the nearness of the steamer to the abutment of the bridge. We have, for the purpose of the argument, accepted appellee's contention that the steamer scraped the wall of the abutment at the time of the collision.

It was likewise agreed that, in view of the location of the mast on the deck of the steamer, the peak of the bridge would have missed the mast if the angle of the bridge were 71°; in other words, the bridge could not have struck the mast unless it was lowered to an angle of 65° or less.

These facts appearing, the conclusion that the bridge must have been lowered is inescapable.

We conclude, therefore, that the east leaf of the bridge was lowered before the steamer had completely passed through, and, because of its having been lowered, the collision occurred. This conclusion is further confirmed by the fact that the city's employee who operated the east leaf of the bridge did not appear as a witness in the case, and his absence was unexplained.

The decree is reversed, with directions that the District Court ascertain the extent of appellant's damages, and, when such damages are ascertained, enter a decree in appellant's favor for the damages thus found.